UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #:_____                    │
│ DATE FILED: 9/30/2025                     │
└──────────────────────────────────────────┘
```

TRAVELERS PROPERTY CASUALTY
INSURANCE CO. OF AMERICA,

                              Plaintiff,

        -against-

HUDSON EXCESS INSURANCE CO.,

                              Defendant.

23-CV-03249 (MMG)

**OPINION & ORDER**

HUDSON EXCESS INSURANCE CO.,

                              Third-Party Plaintiff,

        -against-

MAIN STREET AMERICA ASSURANCE CO.,

                              Third-Party Defendant.

MARGARET M. GARNETT, United States District Judge:

        This is an insurance coverage dispute arising out of a New York State court action (the

"Underlying Action"), that in turn stems from injuries a contractor incurred while working on a

Manhattan-based construction project, of which the property owner is 63 Madison Owner LLC

("63 Madison"), the general contractor is Schimenti Company, LLC ("Schimenti"), the sub-

contractor is Park Construction Group, Ltd. ("Park"), and the sub-sub-contractor is 2BD

Services, Inc. ("2BD").  The parties to the present action are three insurance companies:

Plaintiff Travelers Property Casualty Company of America ("Travelers"), Defendant and Third-

Party Plaintiff Hudson Excess Insurance Company ("Hudson"), and Third-Party Defendant Main

Street American Assurance Company ("Main Street").  Each insurance company issued a policy

providing coverage to at least one defendant in the Underlying Action. And each insurance company argues that another should be on the hook for costs incurred in that lawsuit.

Before the Court now are the parties' three dueling motions for summary judgment. First, Travelers seeks summary judgment declaring that Hudson must defend 63 Madison and Schimenti in the Underlying Action and that Hudson's coverage is excess over Travelers' coverage. Second, Hudson seeks summary judgment declaring that Main Street must defend 63 Madison and Park in the Underlying Action and that Main Street's coverage is primary and non-contributory. Third and last, Main Street seeks summary judgment declaring that it owes no duty to defend or indemnify either 63 Madison or Park in the Underlying Action. For the following reasons, Travelers' motion is GRANTED, Hudson's motion is GRANTED in part, and Main Street's motion is DENIED.

## BACKGROUND

### I. RELEVANT FACTS[1]

#### A. Relevant Entities, the Construction Contracts, and the Policies

The facts, while somewhat complicated, are undisputed. 63 Madison is the owner of a property (the "Property") and hired Schimenti as a contractor to perform construction work at the Property. Schimenti hired Park as a subcontractor to perform some work concerning a stairwell between the twelfth and thirteenth floor of the Property. T-H JSUF ¶ 5; H-MS JSUF ¶ 11. And Park, in turn, hired 2BD as a sub-subcontractor to assist Park in its work. H-MS JSUF ¶ 15. So,

---

[1] The following facts are taken from the Joint 56.1 Statement filed by Travelers and Hudson (Dkt. No. 68 ("T-H JSUF")), or the Joint 56.1 Statement filed by Hudson and Main Street (Dkt. No. 72 ("H-MS JSUF")), or the parties' individual 56.1 Statements where necessary and where the facts therein are either undisputed or not materially disputed with evidence from the record. The Court shall refer to the parties' memoranda of law in support of and opposition to the motions for summary judgment as follows: Dkt. No. 70 ("Trav. Mot."); Dkt. No. 81 ("Opp. to Trav. Mot."); Dkt. No. 87 ("Trav. Reply"); Dkt. No. 74 ("Hudson Mot."); Dkt. No. 76 ("Main Street Mot."); and Dkt. No. 83 ("Opp. to Main Street Mot."). All page numbers refer to ECF page numbers.

to summarize, 63 Madison owns the Property and hired Schimenti to perform work. Schimenti hired Park to perform a subsection of the work, and Park hired 2BD to perform a smaller subsection of the work.

That brings us to the insurance policies and work contracts. Schimenti contracted with Plaintiff Travelers to obtain an insurance policy (the "Travelers Policy") that covered Schimenti as a named insured and 63 Madison as an additional insured. *See* T-H JSUF ¶ 1; Complaint ¶¶ 8, 26. The Traveler's Policy includes an "other insurance" clause specifying that the insurance provided by the Travelers Policy is excess over "[a]ny of the other insurance . . . that is available when the insured is an additional insured . . . under such other insurance." Dkt. No. 67-2 at 33; Trav. Mot. at 3.

When Schimenti hired Park, the two entered a subcontract agreement (the "Schimenti-Park Agreement"). *See* Dkt. No. 67-4. That agreement obligated Park to obtain a commercial general liability insurance policy including Schimenti and 63 Madison as "additional insured." *Id.* Art. 8.3(1)(c). The agreement specified that "[c]overage for the additional insured," meaning Schimenti and 63 Madison, "shall apply as primary and non-contributory insurance before any other insurance or self-insurance." *Id.* The Schimenti-Park Agreement also required Park to furnish "a competent and adequate staff" and "keep and maintain an adequate work force." *Id.* Art. 6.2.

Pursuant to the terms of the Schimenti-Park Agreement, Park obtained insurance coverage (the "Hudson Policy") from Defendant and Third-Party Plaintiff Hudson. *See* Dkt. No. 67-3. The Hudson Policy included as "additional insured" any person or organization that Park performed work for "when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your

policy." *Id.* at 41.  Additionally, the Hudson Policy included as an additional insured "[a]ny other person or organization you are required to add as an additional insured under the contract or agreement described . . . above." *Id.*  The Hudson Policy specified that such persons and organizations are "additional insured only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [Park's] acts or omissions." *Id.*  Finally, the Hudson Policy included an "other insurance" clause that the Hudson Policy's coverage of an additional insured would be "primary and non-contributory" if "specifically required by a written contract." *Id.* at 66.

Next, when Park hired 2BD, the two also entered a subcontract agreement (the "Park-2BD Agreement"). *See* Dkt. No. 73-13.  The agreement obligated 2BD to obtain a commercial general liability insurance policy including "Owner, Landlord, & Park Construction Group . . . as additional insured" and providing "[a]dditional insured coverage. . . on a primary and non-contributory basis." *Id.* at 4.

Pursuant to its contractual obligation under the Park-2BD Agreement, 2BD obtained insurance coverage (the "Main Street Policy") from third-party Defendant Main Street.  Dkt. No. 73-16 at 4.  The Main Street Policy named as additional insureds any person or organization for whom 2BD performed work if 2BD entered a contract with them requiring that they be included as additional insureds.  *Id.*  For "bodily injury" liability, however, the Main Street policy specified that such persons or organization are additional insured only for bodily injury "caused, in whole or in part, by [2BD's] acts or omissions." *Id.*  Finally, the Main Street Policy also specified that if a written contract required that insurance be primary for an additional insured, then "[t]his insurance is primary" and "non-contributory." *Id.* at 3.

In summary, Schimenti and Park signed an agreement requiring Park to obtain insurance covering Schimenti and 63 Madison as additional insureds on a primary, non-contributory basis.

Under the Hudson Policy that Park obtained, Schimenti and 63 Madison are additional insureds for "bodily injury" liability only if the bodily injury occurred in whole or in part due to Park's negligence. Next, Park and 2BD signed an agreement requiring 2BD to obtain insurance covering Park and 63 Madison on a primary, non-contributory basis. Under the Main Street Policy that 2BD obtained, an additional insured was any person or organization that 2BD contracted with, and such person or organization was covered for "bodily injury" liability only if the bodily injury occurred in whole or in part due to 2BD's negligence.

### B. The Underlying Action

During work on the Property, on April 16, 2021, a worker named Christian Fares was injured after he fell while carrying materials on the staircase connecting the eleventh and twelfth floor of the Property. T-H JSUF ¶ 4; Dkt. No. 67-6 at 1. Fares at the time was an employee of either Park or 2BD.[2] On July 14, 2021, Fares sued 63 Madison, Schimenti, and other entities not relevant here, in New York State court, alleging that they failed to maintain a safe and debris-free workplace and thereby caused his accident. *See* Dkt. No. 67-5. In the verified bill of particulars that Fares submitted, he further alleged that the cause of his fall included a lack of adequate manpower and safety equipment. Dkt. No. 67-6 ¶ 6. In response to Fares' complaint, Schimenti impleaded Park into the Underlying Action, alleging that if Schimenti was liable then it was due to Park's negligence. Dkt. No. 73-8. Park then impleaded 2BD, alleging that if Park was liable then it was due to 2BD's negligence. Dkt. No. 73-10.

Travelers provided defense costs to both Schimenti and 63 Madison pursuant to the Travelers Policy. Dkt. No. 1 ¶¶ 25–26. On April 19, 2021, and purportedly on October 25,

---

[2] *Compare* Dkt. No. 73-8 (Schimenti Third-Party Complaint) ¶ 16 (alleging Fares was an employee of Park); *with* Dkt. No. 73-10 (Park Third-Party Complaint) ¶ 8 (alleging Fares was an employee of 2BD).

2021, Travelers tendered costs to Hudson by letter, citing that Schimenti was an additional insured under the Hudson Policy. Dkt. No. 67-1 ¶¶ 9–10.[3] Nevertheless, Hudson refused to provide defense costs to Schimenti or 63 Madison. Hudson, in turn, maintains that Main Street must defend Park and 63 Madison. Nevertheless, it is undisputed that Hudson did not tender Main Street for at least two years. Opp. to Main Street Mot. at 2. Hudson seemingly tendered Main Street for the first time during the present litigation. Main Street Mot. at 9 (alleging that Hudson first demanded a defense of Park from Main Street in the third-party complaint against Main Street).

## II.    PROCEDURAL HISTORY

Plaintiff Travelers initiated this action by filing a complaint against Hudson on April 19, 2023, seeking a declaration that Hudson was obligated to defend Schimenti and 63 Madison in the Underlying Action. *See* Dkt. No. 1 at 6–7. Hudson then filed a third-party complaint against Main Street, alleging that Main Street had a duty to defend and indemnify Schimenti, 63 Madison, and Park in the underlying action. Dkt. No. 31 ¶¶ 71–98. On September 23, 2024, all parties moved for summary judgment. *See* Dkt. Nos. 67, 71, & 75. Travelers moved against Hudson seeking coverage for Schimenti and 63 Madison, Hudson moved against Main Street seeking coverage for Park and 63 Madison, and Main Street moved against Hudson disclaiming all coverage. *See* Dkt. Nos. 67, 71, & 75. Although Hudson filed an opposition to Main Street's motion, Main Street failed to file a reply. Main Street also failed to file an opposition to Hudson's motion for summary judgment.

---

[3] Travelers purports to attach the first and second tenders as Exhibit 7 and 8 to the Declaration of Rachel J. Carbonell, but the two exhibits are duplicates of the first tender. *Compare* Dkt. No. 67-8; *with* Dkt. No. 67-9.

## DISCUSSION

As discussed further below, Travelers has shown that Hudson owes Schimenti and 63 Madison a duty to defend and that Hudson's coverage of those entities is primary and non-contributory.  Accordingly, the Court will grant Travelers' motion for summary judgment. Hudson, in turn, has shown that Main Street owes Park a duty to defend, and that Main Street's coverage of Park is primary and non-contributory.  But Hudson has *not* shown that 63 Madison is an additional insured under the Main Street Policy.  Accordingly, the Court will grant Hudson's motion for summary judgment to the extent it seeks coverage for Park and otherwise deny the motion.  The Court will deny Main Street's motion for summary judgment because the arguments contained therein are not meritorious.

## I.    LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). [4]  "A fact is 'material' when it 'might affect the outcome of the suit under governing law.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).  In determining whether a genuine issue of material fact exists, "[t]he evidence of the nonmovant is to be believed," and a court must draw "all justifiable

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

inferences" in favor of the nonmovant. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Once the movant has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in [the nonmovant's] favor." *Anderson*, 477 U.S. at 256. Reliance upon "conclusory statements" or "mere allegations" is not sufficient to defeat summary judgment. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532–33 (2d Cir. 1993).

## II.    TRAVELERS MOTION FOR SUMMARY JUDGMENT IS GRANTED

Travelers' motion for summary judgment seeks a declaration that: (1) Hudson is obligated to defend Schimenti and 63 Madison; (2) Travelers' insurance of Schimenti and 63 Madison is excess over Hudson's coverage; and (3) Travelers is entitled to an award in the amount Travelers paid in defending Schimenti and 63 Madison to date.[5] For the reasons discussed below, Travelers' motion for summary judgment is granted.

---

[5] At times, Travelers seems to suggest that it is not seeking a declaration that it is entitled to a fees award but is instead seeking the award itself. *See* Trav. Mot. at 15 (asking the Court to "issue an award in favor of Travelers"). *But see* Dkt. No. 67 (requesting an order declaring that Hudson is required to reimburse Travelers for sums paid in defending Schimenti and 63 Madison). The Court construes Travelers to be seeking, at this juncture, a declaration that it is *entitled* to *an* award, only, rather than the specific amount of such award, which has not been proven.

### A. Hudson Owes Schimenti and 63 Madison a Duty to Defend in the Underlying Action

Travelers first requests a declaration that Hudson owes Schimenti and 63 Madison a duty to defend. An insurer's duty to defend an insured is "exceedingly broad" under New York law and "an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . a reasonable probability of coverage.'" *BP Air Condition Corp. v. One Bacon Ins. Grp.*, 8 N.Y.3d 708, 417, 840 N.Y.S.2d 302 (2007) (quoting *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176 (2006)). "If a complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." *Regal Constr. Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37, 904 N.Y.S.2d 338 (2010); *see id.* at 37 ("This standard applies equally to additional insureds and named insureds."). And "[a]n insurer is relieved of the duty to defend only if 'there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy.'" *Allianz Ins. Co. v. Lerner*, 417 F. 3d 109, 115 (2d Cir. 2005) (quoting *Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139 (1985)).

The duty to defend in this case is limited by the Hudson Policy's language that Schimenti and 63 Madison are additional insureds only if the "bodily injury" was caused "in whole or in part" by Park. The New York Court of Appeals has written that "where an insurance policy is restricted to liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured, the coverage applies to injury proximately caused by the named insured." *Burlington Ins. Co. v. NYC Trans. Auth.*, 29 N.Y.3d 313, 317, 79 N.E.3d 477 (2017). The answer to this question (does Hudson owe Schimenti and 63 Madison a duty to defend) is

determined by whether the pleadings in the Underlying Action plausibly allege that Park was a proximate cause of Fares' injury. Fares' bill of particulars meets this standard.

In arguing that the Fares injury was caused "in whole or in part" by Park, Travelers notes that the Schimenti-Park Agreement required Park to furnish adequate workers and maintain an adequate workforce, as well as follow standard safety precautions. Trav. Mot. at 11–13. In addition to his allegations in the complaint about unsafe and debris-ridden premises, Fares' bill of particulars also attributes his injury to, among other causes, "lack of adequate manpower and the availability of personal fall protection." *Id.* at 12. Because, at a minimum, Fares alleges that his injury was caused in part by a lack of adequate manpower and Park was obligated to provide adequate manpower, Travelers argues, Fares' injury was plausibly caused at least "in part" by Park.[6] *Id.* at 12–13. The Court agrees. The Park-Schimenti Agreement obligated Park to provide an adequate workforce and keep the premises "free from debris and unsafe conditions resulting from" the work covered by the Park-Schimenti Agreement, and further rendered Park responsible for the acts and omissions of any Park subcontractors or their agents or employees. Dkt. No. 67-4 at 5. Fares' allegation that the cause of his injury included inadequate manpower thus suggests that Park was at least partially at fault, bringing the complaint within the ambit of the Hudson policy. Accordingly, Hudson has a duty to defend Schimenti and 63 Madison in the Underlying Action.

Hudson's arguments to the contrary fall flat. First, Hudson asserts that because Fares did not name Park as a defendant in the Underlying Action, Travelers cannot show that Fares was injured in part due to Park's conduct. Opp. to Trav. Mot. at 20–21. That Fares did not name

---

[6] This is true whether Fares was an employee of Park, or was employed by Park's subcontractor and agent 2BD—a disputed fact that is not material to resolving the issues in the parties' motions.

Park as a defendant in the Underlying Action says nothing about whether Park was at fault for the accident.[7]  In any event, Hudson's argument is countered by the face of Fares' complaint, which clearly alleges his injury was caused by the negligence and recklessness of defendants and their "subcontractors" (of which Park is one).  Dkt. 67-5 ¶ 118.  Fares' decisions about who to name as a defendant cannot be determinative when the relevant legal question is whether his pleadings state any allegations that bring his "claim even potentially within the protection purchased."  *Regal Constr. Corp.*, 15 N.Y.3d at 37.

Second, Hudson argues there is no factual or legal basis on which Park could be at fault for Fares' injury.  Opp. to Trav. Mot. at 21.  Hudson argues that the Schimenti-Park Agreement confined Park's work to the stairwell between the twelfth and thirteenth floors, but Fares' injury happened as he was carrying materials on the staircase between the eleventh and twelfth floors.  Opp. to Trav. Mot. at 22.  "Thus, Park's scope of work had no nexus to the Fares Occurrence."  *Id.*  As part of this argument, Hudson also says that accepting Travelers' argument "would in effect improperly involve a credibility evaluation."  *Id.*.  This argument, too, fails.  First, there is the obvious point that any worker bringing materials to the area of Park's active work would necessarily have to traverse the flight of stairs leading directly to that work area.  But more importantly, and as noted above, Fares specifically alleged that his fall was caused in part by inadequate manpower and an excess of debris.  Because Park was responsible for providing adequate workers, including by its subcontractors, and ensuring the entire work area was safe and free from debris, the complaint plausibly alleges a claim against Park and obligates Hudson

---

[7] As Hudson well knows, assuming Fares was an employee of Park as he claims, he likely could not sue Park directly, as his injuries are limited to the workers' compensation scheme under New York state law.  *See* Trav. Reply at 5 ("New York's Workers' Compensation Law . . . generally prohibits an employee from suing their employer for work-related injuries.").

to provide coverage.  This is true regardless of whether Fares was working as Park's direct employee or as an employee of its subcontractor 2BD.  Accordingly, the Underlying Action falls within the coverage of the Hudson Policy and Hudson must defend Schimenti and 63 Madison in that action.

### B.  Travelers' Coverage Obligations Are Excess Over Hudson's in the Underlying Action

Travelers also moved for a declaration that "Travelers' coverage obligations towards Schimenti and 63 Madison are excess [over] those of Hudson with respect to the Underlying Action." Dkt. No. 67.  Travelers cites that the Travelers Policy states it is "excess over any other insurance," while the Hudson Policy states that, concerning additional insureds, it is primary and non-contributory if required by a written contract.  *See* Trav. Mot. at 13.  If "one party's policy is primary with respect to the other policy, then the party issuing the primary policy must pay up to the limits of its policy before the excess coverage becomes effective." *Osorio v. Kenart Realty, Inc.*, 48 A.D.3d 650, 653, 852 N.Y.S. 2d 317 (2d Dep't 2008).  Accordingly, Travelers' coverage obligations are excess if Hudson's coverage obligations to Schimenti and 63 Madison are primary.

"Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage . . ., priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance' clauses." *Sports Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa*, 65 A.D.3d 12, 18, 878 N.Y.S. 2d 339, 344 (1st Dep't 2009).  Whether two policies cover the same risk presents a question of law for the Court.  *Charter Oak Fire Ins Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 327 (S.D.N.Y. 2020).  Here, neither party disputes that the Travelers Policy and the Hudson Policy

cover the same risk.  And because the Court determines the policies cover the same risk, it

proceeds to scrutinize the "other insurance" clauses of the two policies.

The applicable clause of the Travelers Policy indicates that it is excess over "[a]ny of the

other insurance . . . that is available to the insured when the insured is an additional insured . . .

under such other insurance."  Dkt. No. 67-2 at 33.  The Hudson Policy's applicable "other

insurance" clause states that coverage for an additional insured shall be "primary" and "non-

contributory" if a written agreement so requires.  Dkt. No. 67-3 at 66.  The Schimenti-Park

Agreement required Park to obtain a policy including Schimenti and 63 Madison as additional

insureds on a primary and non-contributory basis.  Because the conditions of the Hudson

Policy's "other insurance" clause are satisfied, Hudson is obligated to provide primary and non-

contributory coverage to Schimenti and 63 Madison.  *Accord Pecker Iron Works of New York,*

*Inc. v. Travelers Ins. Co.*, 99 N.Y.2d 391, 393–94, 786 N.E.2d 863 (N.Y. 2003).[8]  As a result,

Traveler's coverage for both entities is excess over Hudson's.  Hudson does not contest the part

of Travelers' motion seeking a declaration that Traveler's insurance is excess to Hudson's, and

accordingly Hudson has conceded this point.[9]

### C.  Travelers Is Entitled to Fees from Hudson

---

[8] Generally, the extent of coverage "is controlled by the relevant policy terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage."  *Bovis Lend Lease LMB, Inc. v. Great American Ins. Co.*, 53 A.D.3d 140, 145, 855 N.Y.S. 2d 459 (2008) (2nd Dep't 2008).  But trade contracts are relevant if the *policy* makes coverage depend on the presence of terms in the underlying contract, as is the case here.  *See id.* at 145–46.

[9] *Frontline Processing Corp. v. Merrick Band Corp.*, No. 13-CV-03956 (RPP), 2014 WL 837050, at *11 (S.D.N.Y. Mar. 3, 2014) ("[Plaintiff] did not respond to [defendant's] arguments in support of its motion to dismiss the deceit claims, and therefore this Court deems the deceit claim abandoned."); *McNeil-PPC, Inc. v. Perrigo Co.*, No. 05-CV-01321 (WHP), 2007 WL 81918, at *12 n.4 (S.D.N.Y. Jan. 12, 2007) ("[Defendant] ignores Plaintiffs' contention and, therefore, the argument is deemed conceded."); *See generally Jackson v. Fed Express, Inc.*, 766 F.3d 189, 194 (2d Cir. 2014) (determining that a plaintiff opposing only part of a summary judgment motion can be deemed to have abandoned the unopposed claims).

Lastly, Travelers seeks a declaration that Hudson must "reimburse Travelers for all sums Travelers has paid in defending Schimenti and 63 Madison in the Underlying Action." Dkt. No. 67. Because "Hudson's coverage obligations [are] primary and non-contributory, . . . Travelers is entitled to reimbursement of costs and fees incurred defending Schimenti and 63 Madison in the Underlying Actions." Trav. Mot. at 14. "Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action." *United Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 268–89 (S.D.N.Y. 2013). Construed as a motion for a declaration that Travelers is entitled to fees, the Court will grant the motion as necessarily following from the conclusion that Hudson owes Schimenti and 63 Madison a duty to defend in the Underlying Action.

In opposition, Hudson states, without argument, that 63 Madison "at a minimum is not entitled to any defense cost reimbursement." Opp. to Trav. Mot. at 24. The Court cannot perceive the basis for this argument, nor any conceivable basis for it, and accordingly will disregard the statement.

Hudson also argues that "triable questions exist whether and, if so, when [Hudson] received the Travelers April 19, 2021, letter demarcated as a tender." *Id.* Hudson argues that Travelers provided no proof it delivered the letter and that—even if it did—the letter did not tender on behalf of 63 Madison. *Id.* And Hudson argues that "this Court must hold a fee hearing at which time Hudson . . . can probe and dispute the materiality, necessity and reasonableness of any defense fees Travelers incurred in the Fares Action." *Id.* These arguments do not rebut Travelers' entitlement to fees, only the amount of the eventual fee award. Accordingly, the

14

Court need not address them here, as they are better addressed at an inquest on the amount of fees owed.

In summary, Travelers' motion for summary judgment is granted in full.

## III.    HUDSON'S MOTION FOR SUMMARY JUDGMENT IS GRANTED IN PART AND MAIN STREET'S MOTION FOR SUMMARY JUDGMENT IS DENIED

Hudson and Main Street filed opposing motions for summary judgment. Hudson's motion sought a declaration that (1) Park and 63 Madison are additional insureds under the Main Street Policy; (2) that Main Street has a duty to defend both entities; (3) that Main Street's coverage of Park and 63 Madison is primary; and (4) that Hudson is entitled to fees. Dkt. No. 71.[10] In Main Street's motion for summary judgment, it sought a declaration it has no obligation to defend or indemnify Park or 63 Madison in the Underlying Action. Dkt. No. 75. Main Street did not file an opposition brief to Hudson's motion for summary judgment, nor did Main Street file a reply to Hudson's opposition to Main Street's motion. The Court will construe Main Street's memorandum of law supporting its motion for summary judgment as also opposing Hudson's motion.

### A.  Although Park is An Additional Insured Under the Main Street Policy, Hudson Has Failed to Show that 63 Madison Is an Additional Insured Under the Main Street Policy

Although neither party presents argument on this issue, the Court must determine if Park and 63 Madison are "additional insured" under the Main Street Policy to determine if Main Street could possibly owe them a duty to defend. Hudson relies on the following language from the Main Street Policy:

BUSINESSOWNERS COVERAGE FORM

---

[10] Hudson's motion for summary judgment did not seek a declaration that its coverage is excess over Main Street's. And the Court takes no view on that issue.

> The following is added to paragraph **C. Who Is An Insured** in **Section II–Liability**: 3. Any person(s) or organization(s) for whom you are performing operations is also an additional insured, if you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be included as an additional insured on your policy.

Hudson Mot. at 11 (citing Dkt. No. 73-16 at 4). New York state courts have construed nearly identical language "as requiring contractual privity between the insured and each organization seeking coverage as an additional insured under the relevant policy." *See Colony Ins. Co. v. Sw. Marine & Gen. Ins. Co.*, No. 22-CV-1590 (KPF), 2024 WL 1195401, at *7 (S.D.N.Y. Mar. 19, 2024) (citing *AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc.*, 961 N.Y.S. 2d 3, 4 (1st Dep't 2013). Hence, "if the putative additional insured has not entered into a written agreement with the named insured, there is no coverage, regardless of the named insured's other written commitments with third parties." *Id.* Accordingly, based on the plain text of the Main Street Policy, affirmed by New York courts' interpretation of identical language, for an entity to be an additional insured under the Main Street Policy three things must be true: (1) 2BD performed operations for the entity; and (2) the entity executed a contract or agreement with 2BD; and (3) said contract required 2BD to obtain a policy naming the entity as an additional ensured.

Park meets these requirements and is an additional insured under the Main Street Policy. 2BD performed work on Park's behalf. Park and 2BD entered into the Park-2BD Agreement. Dkt. No. 73-13 at 5. And the Park-2BD Agreement required 2BD to obtain a policy including Park as an additional insured. *Id.* at 4.

63 Madison, however, flunks the contractual privity requirement. 63 Madison was not a signatory to the Park-2BD Agreement. *See* Dkt. No. 73-13 at 5. And there is no indication that 63 Madison entered a separate agreement with 2BD. Given there is no contractual privity

between 63 Madison and 2BD—as the Main Street Policy requires—63 Madison seemingly is

not a named insured under the Main Street Policy, and, if so, Main Street would not owe 63

Madison a duty to defend. Absent briefing from the parties on this issue, the Court cannot grant

summary judgment to Hudson that Main Street owes 63 Madison a duty to defend and the Court

therefore will deny all aspects of Hudson's motion concerning 63 Madison.[11] The following

analysis concerns Hudson's motion with respect to Park, only.

### B. Main Street Owes Park a Duty to Defend in the Underlying Action

The Main Street Policy obligated Main Street to provide coverage for Park for liability

due to bodily injury caused in whole or in part by 2BD. Dkt. No. 73-16 at 4. 2BD's duty to

defend will thus be triggered if the allegations of the complaint suggest a reasonable probability

that 2BD proximately caused Fares' injury. *See supra* Pt. II(A); *Automobile Ins. Co. of Hartford

v. Cook*, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176 (2006). That standard is met.

Park filed a third-party complaint against 2BD alleging that, if Park was liable, it would

be because 2BD was negligent. Dkt. No. 73-10 ¶ 26. That suffices to trigger Main Street's duty

---

[11] Neither Hudson nor Main Street briefed this "contractual privity" issue. And it remains possible that Hudson will be able to explain why—based on some different part of the Main Street Policy than that relied on in Hudson's motion—63 Madison is in fact an additional insured under the Main Street Policy. Accordingly, the Court will not rely on the "contractual privity" issue that it identified *sua sponte* as a basis to grant Main Street's motion for summary judgment that it does *not* owe 63 Madison a duty to defend. *A.H. by E.H. v. New York State Dep't of Health*, 147 F.4th 270, 278–80 (2d Cir. 2025). Separately, this analysis does not affect the Court's conclusion that Hudson owes Schimenti and 63 Madison a duty to defend under the materially different language of the Hudson Policy. The Hudson Policy named as an additional insured (1) any person or organization for whom Park performed work and agreed in writing in a contract would be covered; *and* (2) "[a]ny other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph 1." Dkt. No. 67-3 at 41. Under the Hudson Policy, Schimenti (who had privity of contract with Park) qualifies as an additional insured under paragraph (1), and 63 Madison qualifies as an additional insured under paragraph (2) because the Schimenti-Park Agreement required Park obtain a policy that covered 63 Madison as an additional insured.

to defend. *See All State Interior Demolition Inc. v. Scottsdale Ins. Co.*, 168 A.D.3d 612, 613 (1st Dep't 2019) ("[T]he third-party complaint brought in the underlying action by plaintiffs herein against United . . . alleges that United was negligent, and seeks indemnification from United, and is therefore sufficient to trigger Scottsdale's obligation to defend All State."); *U.S. Specialty Ins. Co. v. Harleysville Worcester Ins. Co.*, No. 20-CV-0791 (SLC), 2021 WL 4043457, at *9 (S.D.N.Y. Sept. 3, 2021) (determining that a virtually identical third-party complaint combined with the allegations in an underlying action sufficed to trigger the duty to defend).

Main Street's principal counter-argument is that it is impossible for it to have a duty to defend because Hudson did not submit a tender until three years after the Underlying Action began. New York insurance law establishes that late tender does not invalidate a claim of coverage absent a showing that "failure to provide timely notice has prejudiced the insurer." N.Y. Ins. Law § 3420(a)(5). It further provides that "[t]he insurer's rights shall not be deemed prejudiced unless the failure to timely provide notice materially impairs the ability of the insurer to investigate or defend the claim." *Id.* § 3420(c)(2)(C).

Such impairment occurs if, by the time the insurer receives notice, the underlying litigation has concluded or has substantially advanced such that an insurer can longer investigate claims or prepare defenses. *See Conergics Corp. v. Dearborn Mid-W. Conveyor Co.*, 144 A.D.3d 516, 529 (1st Dep't 2016) (concluding that late notice prejudiced an insurer because it postdated "the entire pendency of an [insured's] court proceeding . . . as well as the unsuccessful appeal from the dismissal"). An insurer is not prejudiced by late notice, however, if the underlying litigation is still in its early stages or an insurer can still investigate claims or prepare defenses as well as it could have had it received timely notice. *See Salvo v. Greater N.Y. Mut. Ins. Co.*, 213 A.D.3d 587, 588 (N.Y. 1st Dep't 2023) (determining that late notice did not

prejudice the insurer because the insurer failed to explain how the defense of the underlying litigation prejudiced the insurer and "the delay did not affect defendant's access to relevant evidence since discovery was still open at the time defendant received notice of the claim."); *Slocum v. Progressive Nw. Ins. Co.*, 137 A.D. 3d 1634, 1636 (4th Dep't 2016) (holding that— although late notice deprived the insurer of an opportunity to conduct an examination of a plaintiff before she underwent surgery—the insurer did not suffer prejudice because it failed "to establish that postsurgery examinations and plaintiff's medical records will not yield the information sought").

When notice is provided to an insurer more than two years after an insured should have provided notice—as is the case here—the insured (or other claimant) bears the burden of showing the late notice did not prejudice the insurer.  N.Y. Ins. L. § 3420(c)(2)(A).  Hudson has met that initial burden.  Hudson submitted a declaration from attorney Marguerite Peck, who is retained to represent Park in the underlying action.  Dkt. No. 84-20.  Ms. Peck represents that fact discovery has not closed (in fact no depositions have occurred yet), expert discovery remains open, dispositive motions practice has not occurred, there are no dates on the trial calendar, "[t]here are no pending motions against any of the defendants," there were no upcoming court conferences, and the case is not on the trial calendar.  *See id.* at ¶¶ 22–31.  Because Hudson has shown that Main Street could still investigate and prepare a defense in the Underlying Action as of the date of the tender, Hudson satisfied its burden of showing that Main Street suffered no prejudice by the late notice.

Accordingly, the burden shifts to Main Street to make an argument or raise a material fact indicating that the late notice did materially prejudice it.  *See Slocum*, 137 A.D.3d at 1636 ("Plaintiff also established as a matter of law that defendant was not prejudiced by her delay in

providing notice, thus shifting the burden to defendant to raise an issue of fact."); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (ruling that if a movant "demonstrate[ed] the absence of a genuine issue of material fact . . . the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim" and that the "non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Whether evaluated through the lens of Hudson as movant or Main Street as movant, Main Street has plainly failed to meet its burden. Main Street entirely failed to submit a response to Hudson's opposition to Main Street's motion for summary judgment, let alone identify arguments or material facts militating against the issuance of summary judgment. Because there is no basis in the record to conclude that the late notice has "actually prejudiced" Main Street, Main Street has a duty to defend Park in the underlying litigation.

Main Street's only remaining counter arguments are that the insured, not an insurer, must provide tender and must show that the late notice did not prejudice Main Street. Because neither 63 Madison nor Park are a party in this case, and the tender came from Hudson, Main Street asserts summary judgment must issue in its favor. The Court need not spend long on these arguments. Main Street's first argument—the insured and not an insurer must provide tender—contradicts the plain language of New York's insurance law. *See* N.Y. Ins. L. § 3420(a)(3) ("[N]otice given by *or on behalf of the insured* . . ., with particulars sufficient to identify the insured, shall be deemed notice to the insurer.") (emphasis added). And Main Street's second argument—the insured must prove prejudice—neglects that § 3420(c)(2)(A) expressly contemplates that entities besides the insured can prove prejudice.[12]

---

[12] Specifically, § 3420(c)(2)(A) provides that if notice is more than two years late the burden falls on "the insured, injured person *or* other claimant." (emphasis added). Because the statute purports to

Accordingly, Main Street owes a duty to defend Park in the underlying action; Hudson's motion for summary judgment on that question is granted and Main Street's motion for summary judgment to the contrary is denied.

### C.  Main Street's Coverage of Park is Primary and Non-Contributory

Next, Hudson asks for a declaration that Main Street's coverage of Park is primary and non-contributory.  The Court will grant this aspect of Hudson's motion (as it concerns Park). The 2BD Policy stipulates that for an "additional insured" the insurance provided by the 2BD Policy is "primary" and "non-contributory" if a written agreement so requires.  The Park-2BD Agreement obligated 2BD to obtain an insurance policy naming Park as an additional insured on a "primary" and "non-contributory" basis.  Accordingly, Main Street's insurance coverage of Park is primary and non-contributory.   Although Main Street argues that it had no duty to defend Park, it did not argue that—if it did have a duty to defend—the Main Street Policy provides less than "primary" and "non-contributory" coverage.  Thus, the Court will deem Main Street to have conceded this issue.

### D.  Hudson is Entitled to Fees from Main Street

Hudson's last request is for a declaration that Main Street "has the duty to reimburse with statutory interest" the "defense costs incurred by Hudson."  Dkt. No. 71 at 3.  "Where an insurer breached the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action."  *United Parcel Serv.*, 983 F. Supp. at 268–89.  The Court will grant this aspect of Hudson's motion, in part, as a

---

apply "*[i]n in any action* in which an insurer alleges that it was prejudiced as a result of a failure to provide timely notice," it appears clear that the New York legislature intended "other claimant" to be a catchall provision that would include insurers like Hudson.  *Id.* (emphasis added).

direct consequence of the conclusion that Main Street has a duty to defend Park. The Court makes no determination about the extent or amount of those fees.

## CONCLUSION

For the foregoing reasons, Travelers' motion for summary judgment is GRANTED, Hudson's motion for summary judgment is GRANTED in part, and Main Street's motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 67, 71, & 75.

The Court will enter an order at a later date setting a briefing schedule on fees owed.

Dated: September 30, 2025
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge